UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-mj-03047 Louis

UNITED STATES OF AMERICA

V

CESAR AUGUSTO GIL CASTILLO and
LEONARDO I. ALIZONDO PENA,

    **Defendants.**
_____/

### CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?  No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?  No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  No

        Respectfully submitted,

        MARKENZY LAPOINTE
        UNITED STATES ATTORNEY

By: _____
        JUAN A. GONZALEZ
        ASSISTANT UNITED STATES ATTORNEY
        Florida Bar No. 897388
        11200 NW 20th Street, Suite 101
        Miami, Florida 33172
        Telephone:   (305) 715-7640/7653
        Facsimile:   (305) 715-7639
        e-mail: juan.antonio.gonzalez@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Cesar Augusto Gil Castillo and<br>Leonardo I. Alizondo Pena,<br><br>*Defendant(s)* | Case No. 1:23-mj-03047 Louis |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  January 2023 through on or about May 26, 2023  in the county of ____Miami-Dade____ in the ____Southern____ District of ____Florida____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §846 | Conspiracy to possess with intent to distribute 5 kilograms or more of cocaine |
| 21 U.S.C. §841(a)(1) | Possession with intent to distribute 5 kilograms or more of cocaine |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Freddy Batista, Special Agent FBI
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by   FaceTime

Date:  May 27 2023
_____
*Judge's signature*

City and state:         Miami, Florida                    Honorable Lauren F. Louis, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Freddy Batista, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since 2018. I am presently a member of the FBI Miami Field Division High Intensity Drug Trafficking Area (HIDTA) Task Force Group. My duties and responsibilities include conducting criminal investigations of individuals and entities for possible violations of federal laws, particularly those found in Title 18 and Title 21 of the United States Code (U.S.C.). I have participated in investigations which have resulted in the arrests, searches, and seizures of individuals and property. During my career with the FBI, I have used cooperating informants, undercover agents, pen register/trap and trace devices, video surveillance, wiretaps, GPS tracking devices, search warrants, and audio surveillance, among other law enforcement techniques. Additionally, I have participated in several controlled buys of narcotics from targets of law enforcement investigations. Based on my training and experience, I am familiar with methods used by criminals to further their criminal activities. I have also become familiar with violent crimes as it relates to narcotic trafficking. I have personally interviewed several individuals who have described how they conspire and execute the trafficking of narcotics.

2. I make this Affidavit in support of a complaint charging CESAR AUGUSTO GIL CASTILLO (GIL) and LEONARD I. ALIZONDO PENA (ALIZONDO) with possession with intent to distribute five or more kilograms of cocaine in violation of Title 21 U.S.C. § 841(a)(1) and conspiracy to possess with intent to distribute five of more kilograms of cocaine in violation of Title 21 U.S.C. § 846.

3. I am familiar with the facts of this investigation based on my personal participation in it and my conversations with other law enforcement officers. Since this Affidavit is being submitted only to establish probable cause for the requested complaint, I have not included all the details of this investigation.

## PROBABLE CAUSE

4. Since January 2023, the FBI and the City of Miami Police Department have been investigating the drug trafficking activities of GIL. Your affiant learned of GIL and his narcotics organization through a tip from a confidential human source ("CHS"). The CHS (CHS1) stated that GIL was selling powder cocaine in Miami-Dade County. CHS1 also stated that GIL sold and transported narcotics and US currency between Miami, Pittsburgh, and New York.

5. Beginning in or around January 2023, at the direction of law enforcement, CHS1 placed a series of controlled phone calls to GIL wherein they negotiated for CHS1 to purchase cocaine from GIL. Pursuant to these conversation, CHS1, at the direction of law enforcement, conducted two separate purchases of cocaine from GIL, one in January 2023 and the other in February 2023. CHS1 successfully purchased a total of four ounces of powder cocaine from GIL during these purchases. Prior to both purchases, CHS1 was searched by law enforcement to confirm he/she did not have any narcotics. CHS1 was then given the money for the purchase and observed throughout the meetings with GIL. After the meetings, CHS1 immediately provided law enforcement the substance GIL provided in exchange for the money. This substance subsequently tested positive for cocaine. Both purchases were recorded.

6. In or around May 9, 2023, at the direction of the FBI, another FBI CHS (CHS2), who is an associate of CHS1, contacted GIL seeking a kilogram of cocaine. CHS2 and GIL

negotiated the purchase price the kilogram of cocaine. CHS2 and GIL agreed on $22,000 and planned to meet the next day in the North Miami area to conduct the sale.

7.     In or around May 11, 2023, CHS2 placed a controlled phone call to GIL and asked if he (GIL) was ready to conduct the transaction. GIL informed CHS2 that he was ready and would meet CHS2 in the afternoon. Prior to meeting with GIL, CHS2 was searched for any contraband, including money, and none was found. Law enforcement activated the audio/video equipment to be used by CHS2 and gave CHS2 $22,000 in official FBI and City of Miami funds. CHS2 was then followed by law enforcement to 980 Ives Dairy Road, North Miami, Florida. Sometime later, GIL sent CHS2 a voice message stating he was 49 minutes away. Eventually, GIL arrived and parked near CHS2's vehicle. GIL got out of his car empty handed and entered CHS2' vehicle through the front passenger side. Once inside, GIL informed CHS2 that he (GIL) had sold all his kilograms of cocaine to a buyer in Pittsburgh. GIL added that he receives his kilograms of cocaine from Texas and sells them to a buyer in Pittsburgh, but he recently sold four kilograms to a friend in Miami. GIL then informed CHS2 that to keep his word with CHS2, he had contacted his friend in Miami and asked the friend to return one of the kilograms he had recently sold him. GIL assured CHS2 the kilogram of cocaine would be good quality and it would be a in pressed brick form. While in the company of CHS2, GIL placed a call to an individual and informed him/her that he (GIL) had the $22,000 and was waiting. Sometime later, while still in the presence of CHS2, GIL received a call. The individual on the phone informed GIL they were there at which point GIL informed CHS2 his friend arrived. GIL left CHS2's vehicle, entered his, and left the parking lot. Law enforcement observed GIL, drive to 19455 NE 10 Avenue, about one mile away. GIL parked near other vehicles. A short while later, GIL was observed heading back towards CHS2's location. GIL parked near CHS2' vehicle, got out of his car with a black and white colored backpack in his

left hand, and entered CHS2' car through the front passenger side. Once inside CHS2' car, GIL retrieved a brick shaped package, wrapped in blue tape, from the backpack and handed it to CHS2.[1] In return, CHS2 handed GIL the $22,000. GIL counted a portion of the money then told CHS2 to make sure he/she drove the speed limit when leaving to avoid being stopped by law enforcement. GIL placed the money inside the black and white backpack, exited CHS2' vehicle, and left.

8. After completing the transaction with CHS2, law enforcement continued surveilling GIL. GIL exited the parking lot and drove back to 19455 NE 10 Avenue where he parked near several other vehicles. GIL got out of his car with the black and white backpack in hand and got in a black Range Rover bearing Florida license plate number 39BHEQ. GIL leaned on the driver's door of the Range Rover for a short while then entered the rear passenger compartment. GIL eventually got out of the Range Rover, entered his vehicle, and both cars left the vicinity.

9. On or about May 23, 2023, CHS2 contacted GIL and asked GIL if he could provide one kilogram of cocaine for the next day. GIL informed CHS2 that he was out of town but would be back in Miami on Thursday (May 25, 2023). GIL informed CHS2 that he would be able to supply him/her with the cocaine on Thursday once he returned to Miami.

10. On or about May 24, 2023, CHS2 called GIL and ordered 5 kilograms of cocaine. GIL asked CHS2 to confirm the number of kilograms and that he/she had the money because he (GIL) did not want to transport the kilograms to Miami due to lower prices being paid. CHS2 eventually confirmed to GIL that the money was ready for the five kilograms at which time GIL agreed to meet with him/her to following day (May 25, 2023) once he returned to Miami.

---

[1] Once retrieved from CHS2 immediately after the transaction with GIL, the brick shaped package was field tested utilizing TruNarc which revealed a positive test for cocaine.

4

11. On or about May 25, 2023, GIL informed CHS2 he would be in Miami around 6:00 PM. Law enforcement officers then established a surveillance at GIL's residence. Eventually, GIL was observed arriving at his residence driving in a newer model Jeep Compass registered to a rental company, accompanied by an unknown male. GIL removed a white color carry-on size luggage and a multicolored backpack and entered the residence. A short time later, GIL exited the residence empty handed and spoke to the unidentified male who had remained standing by the Jeep Compass the entire time GIL was inside the residence. GIL then got into his vehicle and left the residential neighborhood while being followed by the unidentified male driving the Jeep Compass. Soon thereafter, law enforcement officers conducted a traffic stop of GIL. GIL provided verbal consent to a search of his vehicle. GIL was not found in possession of any narcotics but did have approximately $18,000 (USD) within a backpack. GIL informed law enforcement officers the money was his from selling vehicles to Venezuela. Law enforcement officers did not seize the money. At a different location, law enforcement officers conducted a traffic stop of the unidentified male in the Jeep Compass who was not found in possession of any narcotics but was in possession of a ledger. The ledger contained individuals' names, monetary amounts, and expenses incurred. The male was identified and released.

12. Law enforcement officers continued the surveillance of GIL who eventually arrived at 9661 Sunset Strip, Sunrise, Florida, 33322. Law enforcement officers observed the black Range Rover parked in the driveway. After some time, GIL departed and proceeded to his residence.

13. The evening of May 25, 2023, CHS2 and GIL agreed to meet at the parking lot of Bank of America, 980 Ives Dairy Road, North Miami, Florida the next day at approximately 12:00 PM. This was the same location where GIL and CHS2 had conducted the previous transaction for one kilogram of cocaine,

14. On or about May 26, 2023, CHS2 informed GIL that he/she had the money and was ready to conduct the 5 kilogram transaction at which time they agreed to a price of $20,500 per kilogram of cocaine, for a total of $102,500. Law enforcement officers established a surveillance of GIL's residence, and the residence located at 9661 Sunset Strip, Sunrise, Florida, the location where the Range Rover had been parked the previous day. Law enforcement officers observed GIL leave his residence, drive towards the meeting location, and park in the parking lot of the Bank of America. A short while later, law enforcement officers observed ALIZONDO leave his residence, 9661 Sunset Strip, Sunrise, Florida, with a multicolored backpack and enter the driver's side of the black Range Rover. ALIZONDO drove towards the Bank of America. A short while later, GIL left the parking lot of the Bank of America and stationed his vehicle on the swale across from 19455 NE 10 Avenue, North Miami Beach, Florida. Sometime later, ALIZONDO arrived in the black Range Rover and parked next to GIL's vehicle. Law enforcement observed GIL get out of his vehicle and enter ALIZONDO's Range Rover through the front passenger side. Soon thereafter, GIL contacted CHS2 via a facetime call on WhatsApp and showed him/her multiple brick shaped packages within a backpack and stated he (GIL) was ready. CHS2 told GIL he/she was on the way to the Bank of America parking lot.

15. GIL got out of ALIZONDO's Range Rover and entered his vehicle. The two drove towards the Bank of America parking lot at which time law enforcement officers conducted a traffic stop of both vehicles simultaneously. A police K-9 search on GIL's vehicle revealed the multicolored backpack located in the rear passenger compartment. Inside the backpack were five brick shaped packages. The multicolored backpack with the narcotics was the same backpack that law enforcement officers had observed ALIZONDO carrying when he left his residence. One of

the brick shaped packages was field tested. The results were positive for cocaine. The five brick shaped packages weighed a total of 5.667 kilograms. GIL and ALIZONDO were arrested.

FURTHER AFFIANT SAYETH NAUGHT

_____
FREDDY BATISTA
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Face Time this _27_ day of May, 2023.

_____
HONORABLE LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE